# In the United States Court of Federal Claims

No. 19-171C
Filed: January 15, 2020
NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| SEAIR TRANSPORT SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | Contract Disputes Act; 41 U.S.C. §§ 7101, *et seq*.; RCFC 12(b)(1); Subject-Matter Jurisdiction; RCFC 12(b)(6); Failure to State A Claim; RCFC 26; RCFC 9(k); Promissory Estoppel. |
| v. | ) ) | |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

*Joseph J. D'Erasmo*, Counsel of Record, Joseph J. D'Erasmo & Associates, Rockville, MD, for plaintiff.

*Robert R. Kiepura*, Trial Attorney, *Martin F. Hockey, Jr.*, Deputy Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Allen Lotz*, Of Counsel, Coast Guard Aviation Logistics Center, Elizabeth City, NC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I. INTRODUCTION

In this Contract Disputes Act ("CDA") action, plaintiff, SEAIR Transport Services, Inc. ("SEAIR"), alleges that the United States Coast Guard's Aviation Logistics Center (the "ALC") failed to fully compensate SEAIR for certain work performed under a contract to provide maintenance work on Air Force H60 helicopters. Compl. at ¶¶ 1-7. In addition, SEAIR alleges that the ALC improperly denied its request for an equitable adjustment related to certain work that SEAIR performed under a separate contract for the rewiring of Air Force H60 and H65 aircraft. *Id.* at ¶¶ 8-13.

The government has moved to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def.

Mot. SEAIR has also moved for limited discovery pending the resolution of the government's motion to dismiss, pursuant to RCFC 26. *See generally* Pl. Mot. For the reasons discussed below, the Court: (1) **GRANTS** the government's motion to dismiss; (2) **DENIES** plaintiff's motion for limited discovery; and (3) **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

This Contract Disputes Act matter involves claims related to two contracts by and between SEAIR and the ALC.

First, SEAIR alleges that the ALC breached a contract requiring that SEAIR provide certain maintenance work on Air Force H60 helicopters (the "JDLM Contract"), by failing to fully compensate SEAIR for the work performed under that contract after the government terminated the contract for default. Compl. at ¶¶ 1-7. Second, SEAIR alleges that the ALC improperly denied its request for an equitable adjudgment for work performed under a contract for the rewiring of Air Force H60 and H65 aircraft (the "Rewiring Contract"). *Id.* at ¶¶ 8-13. As relief, SEAIR seeks to recover monetary damages in the amount of $2,315,879.15 for the alleged breach of the JDLM Contract and monetary damages in the amount of $2,751,013.71 in connection with the Rewiring Contract, plus interest, costs and attorneys' fees. *Id.* at 3-4.

As background, SEAIR is a women-owned small business that provides aircraft maintenance and associated services to agencies of the Federal Government. *Id.* at 1. In 2010, the ALC contracted with SEAIR to provide certain engineering, maintenance, repair and aircraft rewiring services for the United States Coast Guard ("Coast Guard"). Def. Mot. at 2, 4.

### 1.     The JDLM Contract

On August 24, 2010, the ALC awarded Contract No. HSCG38-10-D-J00007, entitled "Joint Depot Level Maintenance ("JDLM") and Associated Services on United States Air Force H60 Aircraft, United States Coast Guard, Aviation Logistics Center, Elizabeth City, NC," to SEAIR. Def. App'x at 10; Def. Mot. at 2-3. The JDLM Contract involves on-site maintenance,

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl.") and the exhibits attached thereto ("Compl. Ex."); the government's motion to dismiss ("Def. Mot.") and the appendix attached thereto ("Def. App'x"); and plaintiff's response and opposition to the government's motion to dismiss ("Pl. Resp."). Unless otherwise noted, the facts recited herein are undisputed.

technical and engineering support in the overhaul, repair, modification and servicing of Air Force H60 helicopters at the ALC.  Def. App'x at 10.

The ALC procured work under the JDLM Contract by issuing various task orders to SEAIR.  *See id.* at 34-187.  Pursuant to these task orders, SEAIR primarily provided maintenance and repair services for two Coast Guard helicopters known as aircraft numbers 90-26231 and 92-26465.  *Id.* at 33.

Specifically relevant to this dispute, the ALC's contracting officer issued a notice of termination for default for the JDLM Contract on December 7, 2015.  Compl. at ¶ 3.  The ALC issued this notice due to SEAIR's alleged failure to deliver requested services by required delivery dates and to make reasonable progress under certain task orders.  *Id.*

After SEAIR informed the ALC's contracting officer that it would not appeal the contracting officer's decision to terminate the JDLM Contract for default, SEAIR and the ALC engaged in negotiations to reach an agreement on the amount due to SEAIR for work, labor and supplies for which payment had not yet been received.  Compl. at ¶ 5; Def. Mot. at 5.  Once these negotiations were complete, SEAIR sent the ALC contracting officer a settlement proposal on December 6, 2016.  Def. App'x at 213-216.

On or about August 29, 2017, the Coast Guard acknowledged that the government owed SEAIR $140,341.16 for work performed under the JDLM Contract.  Compl. at ¶ 6; Def. Mot. at 5.  Shortly thereafter, SEAIR received payment in the amount of $140,341.16.  Compl. at ¶ 7.  SEAIR later demanded additional payments from the ALC for the work that SEAIR maintained that it completed under the JDLM Contract in the amount of $2,315,879.15.  *Id.* at Ex. 1.

On October 4, 2018, counsel for the ALC sent an email to SEAIR stating that the ALC believed that SEAIR had received payment for all of the work that SEAIR performed under the JDLM Contract.  Pl. Resp. Ex. 1.  It is undisputed that SEAIR did not submit a CDA claim to the ALC contracting officer seeking payment for additional work performed under the JDLM Contract.  *See* Compl. at ¶¶ 1-7 (showing that SEAIR did not submit a CDA claim for worked performed under the JDLM Contract); Def. Mot. at 12.

### 2. The Rewiring Contract

On August 24, 2010, the ALC awarded Contract No. HSCG38-10-J00008, entitled "Onsite H60 Aircraft Complete Rewiring and H65 Aircraft Select Wiring Replacement, United States Coast Guard, Aviation Logistics Center, Elizabeth City, NC," to SEAIR. Compl. at ¶ 8; Def. Mot. at 3. Pursuant to the terms of the Rewiring Contract, SEAIR was required to rewire certain Coast Guard H60 aircraft "within a 45 calendar day period." Def. App'x at 193; *see also* Compl. at ¶ 10; Def. Mot. at 4.

Specifically relevant to this dispute, the Rewiring Contract contains a contracting officer authority provision which provides that:

> In no event shall any understanding or agreement between the Contractor and any Government employee other than the Contracting Officer on any contract, modification, change order, letter or verbal direction to the Contractor be effective or binding upon the Government. All such actions must be formalized by a proper contractual document executed by an appointed Contracting Officer. The Contractor is hereby put on notice that in the event a Government employee other than the Contracting Officer directs a change in the work to be performed, it is the Contractor's responsibility to make inquiry of the Contracting Officer before making the deviation. Payments will not be made without being authorized by an appointed Contracting Officer with the legal authority to bind the Government.

Def. App'x at 212.

It is undisputed that, on September 15, 2011, the ALC's contracting officer sent a request to SEAIR for a price quotation for reducing the rewiring schedule from 45 process days to 40 days. *Id.* at 218. It is also without dispute that SEAIR submitted a cost proposal to the government regarding such an accelerated schedule on September 28, 2011. *Id.* SEAIR subsequently began to operate on a 40-day rewiring schedule during the period September 14, 2011 through June 2012. *Id.*; Compl. at ¶ 10; Def. Mot. at 6.

On June 27, 2012, SEAIR requested an equitable adjustment from the government to compensate it for increased labor hours worked, additional supplies and related costs incurred due to the accelerated schedule. Def. App'x at 218. On January 29, 2013, the ALC's contracting officer denied SEAIR's request for an equitable adjustment. *Id.*

On August 9, 2016, SEAIR submitted a certified CDA claim to the ALC's contracting officer in the amount of $347,343.80 seeking: (1) a reimbursement of the funds that SEAIR overpaid to the government in the amount of $32,719; (2) the costs that SEAIR incurred in the expedited rewiring; and (3) various price adjustments. *Id.* at 217-220. On December 14, 2016, the ALC's contracting officer issued a final decision denying SEAIR's claim for an equitable adjustment.[2]  Def. App'x at 226-29.

On November 6, 2017, ALC's agency counsel sent an email to SEAIR's counsel stating that he had "seen nothing so far that causes me to question the contracting officer's decision on SEAIR's claim." Pl. Resp. Ex. 2.

B.  **Procedural History**

SEAIR commenced this action on January 31, 2019. *See generally* Compl. On May 31, 2019, the government filed a motion to dismiss the complaint, pursuant to RCFC 12(b)(1) and (b)(6). *See generally* Def. Mot.

On July 16, 2019, SEAIR filed a response and opposition to the government's motion to dismiss. *See generally* Pl. Resp. On July 29, 2019, the government filed a reply in support of its motion to dismiss. *See generally* Def. Reply.

On November 22, 2019, SEAIR filed a motion for limited discovery pending the Court's decision on the government's motion to dismiss. *See generally* Pl. Mot. On December 3, 2019, the government filed a response and opposition to SEAIR's motion for limited discovery. *See generally* Def. Resp. On December 8, 2019, SEAIR filed a reply in support of its motion for limited discovery. *See generally* Pl. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

---

[2] In his final decision, the ALC's contracting officer determined that SEAIR did not provide the government with a copy of the invoice or the tail number for the aircraft involved in the additional work for which SEAIR was seeking payment. Def. App'x at 226. The ALC's contracting officer also determined that the government's request that SEAIR provide a price quotation for accelerating the rewiring schedule did not constitute a modification of the Rewiring Contract. Def. App'x at 227.

### III.   LEGAL STANDARDS

#### A.   RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also* RCFC 12(b)(1). But, plaintiff bears the burden of establishing subject-matter jurisdiction, and plaintiff must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). And so, should the Court determine that "it lacks jurisdiction over the subjectmatter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006) (citations omitted); *see also* RCFC 12(h)(3).

In this regard, the United States Court of Federal Claims is a Court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act is, however, a jurisdictional statute; "it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (alterations original). And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)). In this regard, the Court does not possess subject-matter jurisdiction to consider promissory estoppel claims against the United States. *Steinberg v. United States*, 90 Fed. Cl. 435, 443 (2009) (citations omitted); *see also Russell Corp. v. United*

6

*States*, 210 Ct. Cl. 596, 609 (1976) ("This court, of course, has no jurisdiction to render judgment against the United States based upon a contract implied in law."); *De Archibold v. United States*, 57 Fed. Cl. 29, 32 (2003) ("It is well-established that a duty imposed by law does not create a contract within the Tucker Act jurisdiction of this court.").

### B.     RCFC 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), this Court must also assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Redondo v. United States*, 542 F. App'x 908, 910 (Fed. Cir. 2013). And so, to survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678 (citation omitted). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant. *Id*. at 678-79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C.     The Contract Disputes Act

The Tucker Act provides that this Court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the Contract Disputes Act], . . . on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2); *see also Renda Marine, Inc. v. United States*, 71 Fed. Cl. 378, 386 (2006). And so, to establish jurisdiction in a Contract Disputes Act matter, a plaintiff must demonstrate compliance with the requirements of the CDA.

In this regard, the CDA requires that all claims made by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a final decision. 41 U.S.C. § 7103(a); *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1111-12 (Fed. Cir. 2013) ("A prerequisite for jurisdiction of the

Court of Federal Claims over a CDA claim is a *final decision* by a contracting officer on a *valid claim*.") (emphasis original); *see also Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1359 (Fed. Cir. 2018). If the claim made by the contractor is for more than $100,000.00, the contractor must also certify the claim. 41 U.S.C. § 7103(b)(1). And so, the contractor's claim submission and the requirement that the contracting officer render a final decision on the claim are mandatory and jurisdictional prerequisites before a contractor may file suit in this Court. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (stating that "for the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim—a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision") (citing *James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).

The CDA also requires that a contractor must file a direct action disputing the contracting officer's final decision in this Court within 12 months of receiving the final decision. 41 U.S.C. § 7103(b)(3). And so, a claim brought more than 12 months after receiving a final decision is untimely and must be dismissed for lack of subject-matter jurisdiction. *RMA Eng'r S.A.R.L. v. United States*, 140 Fed. Cl. 191, 217-218 (2018).

### D.     RCFC 9(k) And RCFC 26

RCFC 9(k) requires that a plaintiff identify the substantive provisions of the contract on which it relies to pursue a breach of contract claim in this Court. RCFC 9(k); *Kissi v. United States*, 102 Fed. Cl. 31, 35 (2011) (finding the court lacked jurisdiction due to plaintiff's failure to "adequately plead a contract claim under RCFC 9(k)"). This Court has recognized that the requirements under RCFC 9(k) are met when a plaintiff attaches a copy of the contract—or a similar document—to the complaint or otherwise identifies the provisions of the contract that have allegedly been breached. *See Zainulabeddin v. United States*, 138 Fed. Cl. 492, 508 (2018) (citing *Garreaux v. United States*, 77 Fed. Cl. 726, 730 (2007)); *Baha v. United States*, 123 Fed. Cl. 1, 5 (2015) (finding that a supplement to a contract, which lays out the terms of the parties' agreement, satisfies the pleading threshold of RCFC 9(k)).

Lastly, RCFC 26(d) addresses the timing and sequence of discovery and provides that:

(1) Timing.  A party may not seek discovery from any source before the parties have conferred as required by Appendix A ¶ 3, except in a

>proceeding exempted from initial disclosure under RCFC 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

RCFC 26(d)(1).  The United States Court of Appeals for the Federal Circuit has held that this Court has the authority to "adjust discovery as appropriate to each phase of litigation." *Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999).  And so, "[w]hen a particular issue may be dispositive, the [C]ourt may stay discovery concerning other issues until the critical issue is resolved." *Id.*

### IV.  LEGAL ANALYSIS

The government has moved to dismiss SEAIR's breach of contract claim related to the JDLM Contract upon the grounds that:  (1) SEAIR failed to submit a certified CDA claim to the ALC's contracting officer prior to bringing this action; (2) the claim violates RCFC 9(K); and (3) the claim is, in part, untimely.  Def. Mot. at 12-14.  The government also seeks the dismissal of SEAIR's CDA claim related to the Rewiring Contract, because:  (1) SEAIR filed this action more than 12 months after receiving the ALC contracting officer's final decision on that claim; (2) the claim relies, in part, on a promissory estoppel theory; and (3) the claim otherwise fails to satisfy the requirements of RCFC 9(k). *Id.* at 14-16.  In the alternative, the government argues that the Court should dismiss the complaint, because Counts I and II of the complaint fail to provide the government with fair notice of a plausible claim. *Id.* at 16-19.

In its response and opposition to the government's motion to dismiss, SEAIR counters that its CDA claim related to the JDLM Contract is timely, because SEAIR commenced this action five months after the government paid SEAIR for certain work performed under the JDLM Contract and SEAIR received a "final denial" of this claim on October 4, 2018.  Pl. Resp. at 3.  SEAIR also argues that the Court may consider its CDA claim related to the Rewiring Contract, because the government should be estopped from arguing that this claim is untimely and the government issued a "final denial" of this claim on November 6, 2017. *Id.* at 4.  And so, SEAIR requests that the Court deny the government's motion to dismiss. *Id.*

Lastly, SEAIR has moved for limited discovery to obtain information from the government regarding whether the ALC made certain payments to SEAIR's subcontractor—URS Federal Services, Inc.—for work performed under the JDLM Contract. *See generally* Pl. Mot.  The government opposes this motion. *See generally* Def. Resp.

9

For the reasons set forth below, the factual record in this matter makes clear that SEAIR did not submit a certified CDA claim seeking additional payments under the JDLM Contract prior to commencing this action and that SEAIR's CDA claim related to the Rewiring Contract has been brought more than 12 months after SEAIR received the ALC's contracting officer's final decision on that claim. SEAIR also has not shown that permitting discovery on whether the ALC made certain payments to URS Federal Services, Inc. in connection with the JDLM Contract is warranted at this stage in the litigation. And so, the Court: (1) **GRANTS** the government's motion to dismiss; (2) **DENIES** plaintiff's motion for limited discovery; and (3) **DISMISSES** the complaint.

### A. SEAIR Did Not File A CDA Claim Before Bringing Its JDLM Contract Claim

As an initial matter, there can be no genuine dispute that SEAIR has not satisfied the jurisdictional requirement that a contractor file a CDA claim with the relevant agency's contracting officer before commencing a CDA action in this Court with regards to the JDLM Contract claim. It is well-established that the CDA requires that all claims made by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a final decision before bringing a CDA action in this Court. 41 U.S.C. § 7103(a); *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1111-12 (Fed. Cir. 2013) ("A prerequisite for jurisdiction of the Court of Federal Claims over a CDA claim is a *final decision* by a contracting officer on a *valid claim*.") (emphasis original); *see also Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1359 (Fed. Cir. 2018). And so, if SEAIR failed to file a CDA claim with the contracting officer regarding the JDLM Contract— and to obtain a final decision on that claim from the ALC's contracting officer—before commencing this CDA action, the Court must dismiss its claim for lack of subject-matter jurisdiction. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (stating that "for the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim—a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision") (citing *James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).

In this case, both parties agree that SEAIR did not file a CDA claim with the ALC's contracting officer seeking payment for the additional work, labor and supplies that SEAIR

alleges are due under the JDLM Contract. Compl at ¶¶ 1-7; Def. Mot. at 12-14. Because SEAIR did not submit such a CDA claim prior to commencing this action, the Court must dismiss SEAIR's JDLM Contract claim for lack of subject-matter jurisdiction. RCFC 12(b)(1); *Northrop Grumman Computing Sys., Inc.*, 709 F.3d at 1111-12.

### B. SEAIR's Rewiring Contract Claim Is Untimely

The Court must also dismiss SEAIR's claim based upon the Rewiring Contract, because this claim is untimely. It is well-established that a contractor must file a CDA action in this Court within 12 months of receiving the contracting officer's final decision on a claim. 41 U.S.C. § 7104(b)(3). And so, if SEAIR failed to file this matter within 12 months of receiving the ALC contracting officer's final decision on its claim for equitable adjustment in connection with the Rewiring Contract, the Court must dismiss this claim for lack of subject-matter jurisdiction. *RMA Eng'r S.A.R.L. v. United States*, 140 Fed. Cl. 191, 216-17 (2018).

In this case, the evidence before the Court makes clear that the ALC's contracting officer issued a final decision on SEAIR's equitable adjustment claim on December 14, 2016. Def. App'x at 226-29. And so, to be timely, SEAIR must have brought its CDA claim in this Court by December 14, 2017. 41 U.S.C. § 7104(b)(3). SEAIR commenced this action on January 31, 2019—long after the CDA's 12-month statute of limitations period expired. *See generally* Compl. And so, the Court must also dismiss this claim for lack of subject-matter jurisdiction.[3] *RMA Eng'r*, 140 Fed. Cl. at 216-17; RCFC 12(b)(1).

### C. The Court Denies SEAIR's Request For Limited Discovery

As a final matter, the Court must DENY SEAIR's request to conduct limited discovery pending the resolution of the government's motion to dismiss. *See generally* Pl. Mot.; Pl. Reply. In its motion for limited discovery, SEAIR seeks the opportunity to conduct discovery on

---

[3] SEAIR's argument that its Rewiring Contract claim is timely because the government issued a "final denial" of this claim in an email dated November 6, 2017, is also misguided. Pl. Resp. at 4. Even if it is true that the government issued a final decision on this claim on November 6, 2017, SEAIR commenced this action on January 31, 2019—more than 12 months after receiving the subject email. *See generally* Compl. The government also correctly argues that the Court may not consider SEAIR's promissory estoppel claim related to the Rewiring Contract, because the Court does not possess subject-matter jurisdiction to consider promissory estoppel claims against the United States. *Steinberg v. United States*, 90 Fed. Cl. 435, 443 (2009) (citations omitted).

whether the ALC made certain payments to SEAIR's subcontractor—URS Federal Services, Inc.—for work that SEAIR performed under the JDLM Contract.  Pl. Mot. at 2; Pl. Reply at 1.  But, the discovery that SEAIR seeks has no bearing on the question of whether SEAIR has established jurisdiction to bring this CDA action.  Indeed, as discussed above, the Court does not possess subject-matter jurisdiction to consider any of SEAIR's CDA claims because SEAIR either failed to file a CDA claim with the ALC's contracting officer or failed to timely file the claim.  Given this, the Court DENIES SEAIR's motion for limited discovery.

V.   **CONCLUSION**

In sum, the Court does not possess subject-matter jurisdiction to consider any of SEAIR's CDA claims and SEAIR has not shown that the discovery that it seeks pending the resolution of the government's motion to dismiss is warranted.

And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's motion to dismiss;
2. **DENIES** plaintiff's motion for discovery; and
3. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party shall bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge